The first case of argument this morning is 23-1930 McKinney v. Secretary of Veterans Affairs. Mr. Watkins, when you're ready. Good morning, Your Honors. May it please the Court. The appeal before you begs the Court to send a strong message to the VA. The Bar needs VA to be told in no uncertain terms that its process of evaluating McKinney's rulemaking petition was a sham, that the time delay of eight years in considering that petition is completely unacceptable, and that the agency is being watched for its behavior and its shortcomings. Did you file a mandamus petition to require the VA to move more quickly? You know, they kept moving the line, right? They kept saying, we'll get it done by a certain date, and then they say another date and another date. This is the third time I've been to the Federal Circuit for this rulemaking petition. I tried to move this along very unsuccessfully, right? They first published a notice of proposed rulemaking that said they denied the petition. I assume that was finality because it said it's denied. They didn't ask for any public comment on it. They never even disclosed the actual petition to the public. They never even told the public that McKinney was the petitioner. Is a VA bound by any type of timing requirements? The APA says that they're supposed to act, right? It doesn't say that they have to act within a year or two years. But eight years is way beyond reason. There's a lot of case law that already says that, plenty from the DC Circuit that says that. They're way out of bounds in eight years. So there are cases from other circuits where they've done but, if they conclude that the agency has not acted within a reasonable amount of time? They've said that the agency acted in bad faith, just as this agency has done in this case. Can I ask you, just along similar lines, in my inbox this morning, I got a little something from you all. I assume we've all gotten it, and it's, I guess, a 28-J? Yes. Speaking of timeliness, you know, 28-Js are intended for recent stuff that was done really recently.  As I understand it, and obviously I haven't had much time to look at it, your 28-J is about Loper, which was issued almost a year ago. Yes. And you sent us something this morning, barely enough time for us to absorb it, if we even could. And the other side hasn't had an opportunity to even look at it, or if they have, certainly not enough to respond to us. I would feel weird to even ask them here, to stand here, having gotten it an hour ago, to respond to it. Isn't that a problem for us? Well, here's the circumstance, Your Honor, and I appreciate that the 28-J was filed yesterday. But it was filed yesterday because I read over the weekend an ABA Natural Resources and Environment article entitled Rulemaking Petitions in a World Without Deference to Agencies. It was just published in May. And this argues exactly what the 28-J was pointing out, which is in a post-Loper world. I'm sorry. Did you cite, maybe, I clearly have not had enough time to look at your 28-J letter, your 28-J letter for that article? I didn't cite this article, I cited Loper. And that's what this article was about. Loper was after all the briefing occurred, and frankly, it didn't occur to me that there was going to be the sea change in rulemaking petition filings that this Texas A&M professor is now advocating for. OK, let's go back to the merits. I don't want to belabor this, but most of your arguments deal with the issue you've raised with us today about how long they took. What is our standard? Is there a standard of review other than the one that would apply to rulemaking, which is arbitrary and capricious and very deferential? You're not suggesting that a different standard of review would apply to your circumstance. In a post-Loper world, absent Chevron deference, your standard becomes independent judgment. You get to delve into the issue in a way that you couldn't do it before. The standard under Ohio V. EPA now is reasonable and reasonably explained, a satisfactory explanation for its action. What I can tell you is if you take a look at what VA did with this rulemaking petition, the petition used the term disease process 34 times in 28 pages. In its assessment that it published in the Federal Register of a 28-page rulemaking petition using the word disease process 34 times, VA used it once. The entire focus of the rulemaking petition was about this term disease process and how traumatic brain injuries are now vastly understood in the medical field as following this thing called a disease process. My understanding is the strong theme out of the VA's Federal Register notices seems to be its view that the TSGLI is not intended for a degenerative process. And so if you are injured by something while in service, but then it takes a long time for whatever disease or illness to materialize, then that's not something in keeping with the whole purpose of this benefits program, which is to take care of people in service who have been harmed in an immediate kind of way that requires prompt medical attention. And if that's the theme, then these kinds of diseases and illnesses that materialize much further down the road are really outside the whole point and purpose of this benefits program. That's my understanding of these Federal Register notices. And they do talk about how, therefore, degenerative processes don't quite fit in. It's more about if you get your hand amputated, or you get blinded, or you lose all hearing, or something like this. Those are the kinds of things that this benefits program is intended to help. I don't agree, and I'd like to explain why. McKinney was injured when he was in a Humvee serving on a mountain patrol in Kirkuk, Iraq. He was in the wrong seat of the vehicle when an IED exploded. And the shockwave was focused, unfortunately, on the seat that he was in the vehicle. At that moment, he sustained a traumatic brain injury. He lost consciousness, and he stayed with his troops to finish his service. He had just a couple weeks left before his second tour of duty in Iraq was over. He got home after doing a first post-deployment health assessment. And he already had symptoms from a traumatic brain injury, but they got gradually worse. And less than two years after he got home, with no family history of stroke, he doesn't drink, he doesn't smoke. He's Mormon, so it's against his religion. No family history of a stroke. When he had a stroke, was he still in the service? No. So when was he discharged from the service? He was discharged from the service approximately 18 months before he had his stroke. So when he had his stroke, if you could establish under a lighter test here to get VA benefits, he would have been eligible to submit a claim for some sort of VA benefits, right? He's already been declared by the VA to be 100% permanent and total disabled. Oh, OK. So this is about insurance. Yeah, that's actually what I wanted to start asking, because I couldn't find it in the briefs. I'm sorry. Maybe it's there. What is this insurance policy for a lump sum payment? That's correct. So Congress created this federal benefit because for ordinary folks like us, civilians. No, I understand. OK, so a lump sum payment. So you're asking for a lump sum payment under this insurance, and this was for a stroke that occurred 18 months after he was discharged. Which is permitted by VA's regulation, which says you must suffer a scheduled loss under Section 9.21C within two years of the traumatic injury. It was within two years. And I'll explain the reason why. I'll talk about my old friend Bob Dole. Bob Dole was injured during his service in Italy. His arm was severely injured, and it took a long time, many surgeries, to try to save him. He's my old friend, too, by the way. But when the VA extended it from one year to two years, they relied on kind of the example. The reason they were doing it was because if you had an injury, it might take a year to figure out that you need to amputate your foot. And therefore, that's the reason for their extension. It wasn't in the context of kind of a stroke which would occur later on in the process, in which some of the studies they rely on. You may disagree or agree, but they've got some basis for concluding that things such as strokes occur later down the road, generally. But within two years. And their own regulation says that's OK for coverage. This isn't about McKinney. There's a much broader class. But the traumatic injury itself is supposed to occur almost immediately. It does. That's right. And with a traumatic brain injury, it does occur immediately. But then you have these effects that occur over a lengthy period of time. That's the Macell and DeWitt paper that is the basis of this petition for rulemaking. 500,000 plus servicemen and women experience traumatic brain injuries over the last 15 years. That's a lot of people. It shouldn't be that if you get zinged by radiation while you're serving, and it takes a year and a half before the cancer to show up, that you get covered by the insurance. You're kind of running out of time. And I wanted to hear from you what you have to say about the standard review and our case law with respect to petitions for rulemaking.  And forget about Loper. I mean, I don't see that anybody cited Chevron. So I wouldn't be too concerned about that. So we obviously, or we have through the years, given a very high standard here, we don't get involved in the policymaking or the rulemaking process itself. That's not what Loper says anymore. Times have changed post-Chevron. So you think that under Loper, I mean, I guess you raised it for the first time here this morning. But you think that Loper got rid of the standard to review that has been applied across the board among various circuits? And agency rulemaking. And even now it's a different standard. I would say even more importantly, the stringent standards that have been applied by the parties pre-Loper in all of the briefing, especially for the denial of a petition for rulemaking, are all called into question now. But what about the fact that this, I can't find what the statute says, but there's an extraordinarily broad delegation of authority to the VA under the statute. The statute, are we talking about, have you presented an argument that the words of the statute require this? I view that we didn't need to because the rationale presented in the Federal Register publication denying the petition is so out of sync with the petition itself that it is arbitrary and capricious. It doesn't matter to me. Are you saying now that we apply a de novo standard to the, we have to go back to the statute? Well, they didn't call it de novo in Loper, but. But we go back to the statute and we read the words of the statute and we have to determine now whether we interpret those words as covering and not covering. And what's the standard of review now? What do you say the standard review is? I say only that what Loper has given us is the ability for you to exercise independent judgment. And that's something more than you had under Chevron. Okay. I'm happy to further brief this post argument. I apologize to the court for just raising it now, but it just occurred to me based on this ABA publication, literally over the weekend when I read it, it's the May issue, that we have a problem with the standard in this case. Regardless, I would contend that the VA's decision is arbitrary and capricious and a really strong message needs to be said. And that argument is because you think it's out of sync with the statute? Their regulation says... And with the petition. Their regulation allows physical illness or disease caused by a pyogenic infection, biological, chemical, or radiological weapons, or accidental ingestion of a contaminated substance. The very rationale that was used by the VA to have those in place in this regulation was that they follow a disease process. So too does traumatic brain injury. Why should traumatic brain injury be excluded when physical illness or disease, stroke according to the VA, from a radiological weapon is covered and that radiation doesn't cause you to have cancer for a year and a half? You're within the two years. The injury occurred immediately when your body got the radiation. The VA identified a whole bunch of other diseases or illnesses that have an association with TBI where they said those conditions don't materialize for many years. And I'm not advocating for them. I'm only advocating for within two years. But the problem is the rulemaking that you're advocating for covers all diseases and all illnesses that are caused, directly caused by TBI or by an ordinance exception. But only within two years. We, I haven't asked in that rulemaking petition to change Section 9, this is 38 CFR Section 9.20D4. And so the VA has to consider the proposed rulemaking and look at therefore all the diseases and illnesses, not just one particular disease or condition. Had they only given an explanation that makes sense in the Federal Register, then we wouldn't be here. But their explanation for why they denied the petition in the Federal Register doesn't talk about disease processes at all. I don't understand how that passes muster. Okay. We'll restore some rebuttal time. Let's hear from the government. Can I have a little bit of time back on the rebuttal, please? Yeah, I just said that. Thank you. Mr. Faulkner, good morning. Please proceed. May it please the Court. Petitioner has asked the VA to promulgate rules changing Section 9.20 to include illnesses or disease caused by exposure to explosive ordinance within coverage for desiccant. And the VA determined that doing so would be inconsistent with the plain language of the statute and its purpose. I'll come to the manifestation issue second, but to begin with the plain language of the statute, Section 1980AC1 states that a scheduled loss under desiccant must directly result from a traumatic injury. Consistent with this clear statutory directive, the VA determined which illnesses or diseases might have a positive association with explosive ordinance. And then it took the process of determining whether that association rises to the level of the direct causation, whether that standard can be met. The VA then interviewed several medical experts to determine whether that direct result standard can be met for these illnesses or diseases that have an association with explosive ordinances. Importantly, none of the experts that the VA interviewed identified any illnesses or diseases that directly result from explosive ordinance. That's in contrast to the traumatic brain injury itself. And Petitioner has not identified one either. In fact, the meetings with the... None of them identified a disease or condition that has some association with TBI? No. Initially, the VA identified illnesses and diseases that have a positive association with a TBI or with the explosive ordinance. But the statute itself requires the illness or disease to directly result from the traumatic injury. So the VA had to interview medical experts to see whether these illnesses or diseases do in fact directly result, for example, from the TBI or the explosive ordinance. And the experts said that the science just wasn't there, it was in its infancy, or that it would be next to impossible. I think some use pretty strong language in terms of it would be impossible to make this direct correlation next to impossible. In all those interviews, the meeting notes from the appendix around appendix 1288 to 1307. I thought the next to impossible conclusion was more in situations where the disease or condition materializes many, many years down the road. And then you have a question whether there is any kind of causal link between something like Parkinson's on date X and then the TBI event that was date X minus 10 years or 20 years. Yes, so I think they're closely related, both those issues in terms of the further away the manifestation begins, the more difficult it's going to be able to prove that nexus requirement. But the next to impossible language itself is on appendix 1288, and that was directly related to the causation issue between the illness and then the later injury, the explosive ordinance and the illness or disease. Why isn't a stroke a type of brain injury? I'm sorry, Your Honor? Why isn't a stroke a type of brain injury? So medically, Your Honor, I don't think that's clear from the record, but I think they did recognize that a stroke could be a residual of a traumatic brain injury. What if it develops from radiation? In that case, then, to CIGLI may provide the coverage under the five enumerated exceptions to the illness or diseases. So why would you provide coverage under that scenario but not what we have before us? So the VA determined that the illness or disease is associated with a chemical, radiological, or a biological weapon. Directly result from that exposure. In contrast, and this comes through on appendix three in the final decision, in contrast, illnesses or diseases associated with explosive ordinance, the science just isn't there to establish that direct causal link. And the statute has other lines, or I think it's a statute that says it's a direct cause and no other cause, right? Yes, Your Honor, correct. That's 1980 AAC1. Okay. Do you have any comment about the discussion that predominated with your friend about the recent, I don't, did you get the 28-J letter? Yes, Your Honor, I saw it last night. Okay. Do you have anything you want, I mean, again, I can imagine that you haven't had a chance to look through it given under these circumstances, but if you have anything to say about that, you formed a view of that? Only that Massachusetts VEPA, which states the highly deferential and limited review standard did not itself rely on Chevron, and none of the cases in this court relied on Chevron. So I don't see how it impacts these cases at all. There's a, and there's a pretty broad delegation, right? I mean, the statute has the language you cite, and doesn't it, I can't find it now in my notes, but I thought there was a pretty broad delegation that, and the VA just then figures out what's covered and what's not. Am I wrong? You're correct, Your Honor. Your Honor, that's 1988B1. It says the VA has the authority to promulgate rules with respect to what losses are actually covered by this insurance statistically. Now, your friend mentioned, and I take for granted that Mr. McKinney is currently on VA benefits because once he was discharged, he's entitled to compensation. And we know that we have these cases all the time. So we know the standard for determining is kind of a causation thing in the VA. Is that different, separate and distinct from the kind of causation thing we would apply here? Yes, I think the standard here is much more rigorous. I think with, in terms of service connection, you have the in-service injury, you have the present disability. Then that next is determined based on more likely than not typically, and the VA decisions you read that are less likely than not. So that's significantly lesser than the must result directly from and from no other cause. And what about the two-year thing? That's a little, you know, there's an argument there. I mean, if you, but you didn't have to change the two years. I think everyone in the world was probably glad that you did because as I read the commentary, it was largely for the example I mentioned to your friend. But why shouldn't we take that as a given now so that all this causation stuff is good enough because it happened within the two-year period? Yes, I think your point was well taken in terms of why they expanded it, working with the Wounded Warriors Project. So that's correct from the Federal Register. I think the counter to that is, first of all, administratively, the VA noted in its final rule here about expanding even further. It'd be difficult to prove these nexuses the further you go out. And I think that's an issue for the illnesses or diseases that are associated with the explosive ordinance, which is what the petition is for. Because they aren't a direct result from those explosive ordinances. So why wouldn't it make sense to have a rule? You can get covered as long as you're within the two years. And if you're outside the two years, you can't. Because you still have to comply with the causation requirement that Congress dictated here. You keep mentioning a nexus. I'm not clear how that applies here. Are you saying that there was a lack of nexus between the brain injury and the stroke? Your Honor, no. There's a positive association between those things. But the medical evidence, the science, and the record states that there's no direct, you can't state for certain that this stroke was a direct result of that traumatic brain injury. That's accurate. That's what the doctor said. There could be other causes as well. So, for example, they talked about, like, well, maybe there's an issue with high blood pressure. You can't necessarily prove that. Maybe, if that's the case, why shouldn't this be another one of the exceptions, exception number six? Indeed, if you looked at whether there's a nexus between the stroke and the brain injury, then that I see almost as a concession that this qualifies as an exception, except that in this case, in this case, there's no coverage. Your Honor, so it's not a concession because it doesn't meet the causation requirement. VA, in our brief, we say this, they recognize an association between some illnesses and diseases and, for example, the explosive ordnance, but it's not a direct result and it's not from no other causes. Is the causation done on a case-by-case basis? In this case, the VA made a decision that these illnesses and diseases can't meet that causation standard, so we're not going to promulgate the rules in addition to the manifestation issue. Is the causation standard applied to the other five exceptions? So, and I think this is on Appendix 3 on that first paragraph, and in the beginning, the top paragraph, it says, it specifically says, well, these illnesses and diseases do not result from the explosive ordnance, whereas the enumerated exceptions, specifically the chemical, radiological, and biological weapons do result. So they did make that distinction, and that is part of why those enumerated exceptions were enumerated in the first place, because they did find that causation was met. So let me see if I get this straight. When it comes to the five covered exceptions, things like chemical weapons, biological weapons, exposure, are you saying the way the regulation operates is the VA has made a determination ex ante that if anybody who is exposed to those kinds of chemical, biological weapons then suffers from some kind of disease or condition within two years of that exposure, the VA is going to say, okay, that disease or illness was caused by that exposure of biological and chemical weapons? Or is there some additional process that the claimant has to go through and say, look, now that I qualify, because it's a covered exception under the regulation, now let me make the case for proving why I, in fact, am suffering from this condition because it was caused by the biological weapon exposure. Which one is it? So they wouldn't have to, the direct result would already be established then, Your Honor, and then they would just have to show that there would be a scheduled loss, one of those scheduled losses listed. Right, okay. So therefore, for the covered exceptions, the way the process works is different than what we're normally used to when we're looking at benefits claims for a veteran, where the veteran is suffering from some kind of disease or condition and then has to try to make a case for some kind of, I don't know, causal link. Yes, Your Honor, it is different in that sense. It's much more rigorous here with the traumatic service members group life insurance as compared to the service connection analysis. So is there a list about the conditions that would arise as a result of these five exceptions that are covered? So there's no list. There is a description in the TSIGLI, sorry, the Traumatic Service Members Group Life Insurance Procedural Guide that gives examples. For example, if you're exposed to a radiological weapon and then within a year you develop some sort of cancer. If you're exposed to a biological weapon and you develop respiratory issues, things like that said, they say would be covered. What do you say within a year? It's two years, isn't it? That was just an example, Your Honor. You're right, within two years. You said- Go ahead. You said that there was a science that backed up a nexus between the radiation and stroke, right? Between the radiation and the stroke? And the stroke. So I think that it's recognized that there's a positive association. When you say recognized, you're talking about science. Sciences recognize that or? A journal. So in the proposed rulemaking they cite a journal that says there's a positive association between a TBI and maybe several years later if you have a stroke. An increased risk, they also say. Can you show us in the record where that science is? Yes. That's Appendix 1402. And it's the middle part of that notice, scientific reports indicate that. 1402? Yes, Your Honor. And that's the initial proposed rulemaking, notice of proposed rulemaking, in August 2021. I thought that was six. Sorry, Your Honor. It's all right, I got it. Yes, that's six, Your Honor. And it's the middle paragraph, beginning with scientific reports indicate, and then partway down it talks about the heightened risk of a stroke following a TBI, as well as other conditions that might be a heightened risk. So in your view, that's not enough because you want this direct causal link. Yes, Your Honor. In addition to the first point that was discussed previously, the manifestation issue, the sense that an illness or disease that might result from a TBI or explosive ordinance won't manifest for maybe two years or more to come. I think some of the examples given in the final rule, Alzheimer's, dementia, increased risk of certain brain tumors, all those might manifest years, years later, which isn't the sort of covers that Sigley is designed to cover. It's really designed to meet the short-term needs of a service member who has experienced some sort of traumatic injury. All of this thinking and decision-making was born out of a 10-year review, which started in 2015. Is the VA now doing a 20-year review? It's 2025. Your Honor, I'm not aware of a additional 20-year review. I think the 10-year review is required by statute as well by Congress. And in the papers, you talked about Congress also passing something to say you ought to study PTSD, and you did. You responded to a congressional directive to study something. I assume they never did anything about that. So PTSD is not included within this coverage, you're right, Your Honor. Yeah, but they did ask you to take a look at it. Yes, Your Honor. You took a look at it and responded, and they didn't act on that. Yes, Your Honor. In looking at the record that you took us to on page 1402, it's citing a, I guess a study, but it says patients with traumatic brain injury, the population-based study suggests an increased risk of stroke. Yes, Your Honor. Yeah. You don't see that as a nexus of any kind? I don't see that as meeting the stringent requirement here to be a direct result from the traumatic injury and from no other cause. And that's the VA's decision. And in the meeting notes that I referenced before, Appendix 1288 to 1307, they delve into that issue on the causation as well as the manifestation issue. So you've gone, you read this about the latent diseases that could exist as a result of an injury, brain injury? Yes, Your Honor. But again, those associations don't meet the requirement that Congress imposed in 1980 itself. So you pointed us to the record where it shows a nexus of some kind between brain injury and the stroke. Where's the nexus for the other type of injuries like the one that Judge Chenell was talking about? So that happened in 2005, Your Honor. So that decision, those decisions, the enumerated exceptions, because TOSIGLI broadly excludes coverage for a disease or illness. And it said in these five circumstances, we're gonna include coverage under TOSIGLI. So that decision was made in 2005. And I don't think besides the final decision, it's all part of the record, the decision making with respect to those rules when the Secretary promulgated them. Thank you. Thank you. You're restored two minutes, everybody. Judge Reyna, the VA has no idea how they came up with those five exceptions that are in the regulation. That's what's in the appendix. I can't cite the page to you at this moment, but I can give it to you after the fact. But they don't know why. So they don't know why they can't have a sixth one either. My colleague said that this doesn't meet the causation requirement. McKinney's petition is based on this paper from the Journal of Neurotrauma, August 2010 by Macell and DeWitt, Traumatic Brain Injury Docs. It's been cited over 1,200 times, including by the National Academy and the CDC. It says that stroke or a laundry list of other conditions are the direct cause of a traumatic brain injury. So I don't understand what the problem is with causation. The entire medical world has accepted this paper. Well, my understanding is there's, at best, a conflict in the record about this, that there's other statements, including the doctors at the VA interview that have different views of this. And yes, there can be correlations or associations, positive associations, but those sorts of things are not quite the same thing as a direct causal link. And so I guess my point is, I think there's a mixed record here. I don't think there is some uniform record where everybody says there's a direct causal link for strokes and many other conditions with TBI. I would respond that VA is the only one who says that there isn't a link. VA poisoned the water with the medical experts. They told them that McKinney, petitioner, is 52 and has a history of malignant hypertension, obesity, and smokes. None of that's true. They shouldn't have even been talking about McKinney. This rulemaking petition isn't about McKinney. It's about fixing a regulation that would affect millions of service members covered by TSGLI, the insurance. They didn't give the medical experts a copy of his petition. They didn't give the medical experts a copy of the Maysell and DeWitt article. They poisoned the water. So it's no wonder that there's a mixed record, as you say, because they directed what the record was going to say. They knew in advance what they wanted the result to be. I think that... At the end of the day, they did respond to the petition. And this is what I asked you before. I think your response to me was that it was a very slight response. It was barely responsive, something. It's not responsive at all to the central thrust of the petition, which is the TBIs follow a disease process, just like those five enumerated exceptions. So you should add explosive ordinance, which causes TBIs. Let's say they did respond to your petition, at least in part. Would we have authority to go in and change that? I think you can vacate the denial. I'm not asking you to adopt a new policy on behalf of the VA. They need to get it right. They didn't analyze it properly. Well, that's a problem. We cannot adopt a new policy. I understand. But you can vacate and tell them that their process was wildly flawed and that their time delay for eight years is bad faith. I think the real struggle with your case is procedural in nature. It has to do with this, what we're talking about now, and not the fact-based type questions. There's no reason to have to get in the weeds here. Their process was very flawed. If there are no other questions, I thank the court for its time. Thank you. We thank both sides. The case is submitted.